FILED

2019 May-03  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STARR CULPEPPER, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.:** |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BIRMINGHAM JEFFERSON COUNTY | ) | |
| TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Starr Culpepper, by and through her attorneys, and for her complaint against Defendant Birmingham Jefferson County Transit Authority ("BJCTA"), hereby states and alleges as follows:

### NATURE OF THE CASE

1.      This is an action for damages, declaratory and injunctive relief to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. as amended by the Civil Rights Act of 1991, (hereinafter "Title VII"), and 42 U.S.C. § 1981, as applied by and through 42 U.S.C. § 1983, for racial discrimination, gender discrimination, retaliation and negligent or wanton supervision, training, and retention.

### JURISDICTION AND VENUE

2.      This action arises under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq*., as amended by the Civil Rights Act of 1991, under the Civil Rights Act of 1866,

42 U.S.C. § 1981 and under Alabama common law.

3.     Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) since Defendants do business in this district and a substantial part of the conduct giving rise to the claims occurred in this district.

## PARTIES

5.     Plaintiff, Star Culpepper, (hereinafter "Culpepper" or "Plaintiff") is an individual over the age of 19 and a resident citizen of Jefferson, County Alabama.

6.     Defendant Birmingham Jefferson County Transit Authority (hereinafter "BJCTA" or "Defendant") is the transportation operator headquartered in the city of Birmingham, Alabama that provides transportation services for Birmingham and surrounding municipalities in Jefferson County, Alabama.   The Defendant does business in the State of Alabama, including this district, and employs at least fifty (50) persons.

7.     Defendant BJCTA at all times material hereto, was Plaintiff's employer as defined by Title VII, 42 U.S.C. § 1981, the Equal Pay Act and applicable law.

## ADMINISTRATIVE PROCEDURES

8.     On or about August 1, 2018, within 180 days of learning of the acts of discrimination of which she complains, Culpepper filed a charge of discrimination with the Equal Opportunity Employment Commission (hereinafter "EEOC"), Charge No. 420-2018-03299. (See Exhibit A).

9.     More than 180 days have elapsed since Culpepper filed the charge with the EEOC.

10.    Culpepper received a Notice of Right to Sue from the EEOC on or about February 12, 2019. Less than ninety (90) days have elapsed since Plaintiff Culpepper received said Notice of Right to Sue. (See Exhibit B).

11.    All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

12.    On or about January 17, 2013, Plaintiff Culpepper was hired by the BJCTA in Jefferson County, Alabama.

13.    From January 2013 to October 2015, Plaintiff Culpepper was employed with BJCTA in Jefferson County, Alabama as an Executive Assistant and Board Support.

14.    From October 2015 to April 2017, Plaintiff Culpepper was employed with BJCTA in Jefferson County, Alabama as a Contract Administrator.

15.    From April 2017 to January 2018, Plaintiff Culpepper was employed with BJCTA in Jefferson County, Alabama as the Contract and Government Affairs Administrator.

16.    From January 2018 to April 30, 2018, Plaintiff Culpepper was employed with BJCTA in Jefferson County, Alabama as a Contract and Compliance Officer.

17.    On or about April 3, 2018, at the BJCTA offices in Jefferson County, Alabama, the BJCTA's Executive Director (Barbara Murdock) was suspended by the BJCTA Board of Directors "pending a full investigation into finance matters."

18.    According to a BJCTA attorney, the investigation would focus on the potential "unauthorized use" of BJCTA funds.

19.    On or about April 10, 2018, an attorney for Murdock wrote the BJCTA informing it that Murdock believed that with respect to Murdock's suspension Murdock had been denied due process and that she had been discriminated against. In said letter, Murdock's attorney asked for

a list of the charges against Murdock, an opportunity to respond to those charges, and/or an opportunity to meet with the BJCTA's Board of Directors and leadership.

20.     On or about April 11, 2018, at the BJCTA offices in Jefferson County, Alabama, continued its investigation into Murdock's unauthorized use of BJCTA funds and also included in its investigation, Murdock's concerns of discrimination and lack of due process.

21.     On or about April 11, 2018, at the BJCTA offices in Jefferson County, Alabama, the BJCTA Board Chair told Plaintiff that the BJCTA Board of Directors had recently been made aware that two unauthorized checks totaling $20,000.00 were paid to Murdock for relocation expenses, without the Board of Directors knowledge or approval.

22.     On or about April 11, 2018, at the BJCTA offices in Jefferson County, Alabama, the Plaintiff told the BJCTA Board Chair that she (the Plaintiff) did not recall whether payments for moving expenses in the amount of $20,000.00 were made to Murdock.

23.     At that time Plaintiff Culpepper informed the Chair, however, that the Plaintiff was aware that Murdock relocated to the Birmingham metropolitan area in 2014 from Washington, D.C. to take the Chief of Staff position at BJCTA.   Further, the Plaintiff also informed the Chair that in 2014, the Plaintiff served as the Executive Assistant to Ann August, the former BJCTA Executive Director.

24.     In 2014, for prospective employees to receive relocation expenses for moving to Birmingham and taking a job at BJCTA, the employee would have to make a request for relocation expenses to Executive Director August.   In 2014, Plaintiff Culpepper helped facilitate the processing of relocation expense requests.   From 2014 to the present, the limit for BJCTA relocation expenses / costs was $5,000.00.

25.     On or about April 11, 2018, at the BJCTA offices in Jefferson County, Alabama,

the Plaintiff told the BJCTA Board Chair that the Plaintiff did recall Murdock receiving the $5,000.00 limit for relocation expenses in 2014 and that said expenses were approved by Executive Director August.

26.     On or about April 11, 2018, at the BJCTA offices in Jefferson County, Alabama, the BJCTA Board Chairman asked Plaintiff Culpepper to research and investigate whether there were any other checks for relocation expenses issued to Murdock besides the $5,000.00 check that Plaintiff Culpepper recalled.

27.     The Plaintiff was asked to do this research because she was the Executive Assistant in 2014 when any such relocation expenses should have been made and would have played a role in processing any relocation expenses for Murdock in the 2014 time period.   Plaintiff was also asked to do this research because she was the BJCTA Compliance Officer in April 2018.

28.     On or about April 19, 2018, at the BJCTA offices in Jefferson County, Alabama, following the request of the BJCTA Board Chairman, Plaintiff Culpepper discovered documentation that Barbara Murdock received $20,000.00 for relocation fees after Murdock had been promoted from Chief of Staff to Executive Director.   The checks – one for $2,000.00 and one for $18,000.00 were – were made payable to Murdock by the Finance Director (Karen Jacobs) in 2016.

29.     At the time the $20,000.00 in checks for relocation expenses were paid to Murdock by Jacobs, Murdock was already living in the Birmingham, Alabama metro area.  Thus, there was no need for any checks regarding relocation expenses to be given to Murdock at that time.

30.     On or about April 19, 2018, at the BJCTA offices in Jefferson County, Alabama, Plaintiff Culpepper revealed the information concerning the additional relocation expense checks and the accompanying documentation to the Interim Executive Director Christopher Ruffin.

31.     On or about April 19, 2018, at the BJCTA offices in Jefferson County, Alabama, in response to receiving the foregoing information, Ruffin told Plaintiff Culpepper to immediately report the information concerning the additional relocation expense checks to the BJCTA Board Chair.

32.     On or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, the BJCTA Board Chair (Ruby Davis) along with the Vice Chair (Ted Smith) and Secretary (Martin Weinberg) were all replaced with new board members.

33.     On or about April 25, 2018, at approximately 4:20pm, Plaintiff Culpeper was summoned to the briefing room at the BJCTA offices in Jefferson County, Alabama.  At said time and place, the BJCTA HR Director (Mike Simms) and the BJCTA Chief of Staff (Adrian Solomon) met with the Plaintiff and informed her that she was being placed on administrative leave/suspension without pay.

34.     On or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, the Plaintiff inquired as to why she was being suspended without pay, and the Chief of Staff stated that the disciplinary action was for an alleged misuse/unauthorized use of the company credit card – i.e. unauthorized use of BJCTA funds.

35.     At said time and place, the Plaintiff reminded the Chief of Staff and HR Director that Plaintiff did not have a BJCTA credit card in her possession.  The Chief of Staff responded by saying "well I guess it was when you used to have one."

36.     At said time and place, on or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, Plaintiff reminded the Chief of Staff that the Plaintiff only had a BJCTA credit card from 2013-2015.  In response, the Chief of Staff said she "guessed that's when it was for."

37.     On or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, the Plaintiff asked the Chief of Staff under whose directive was the Plaintiff being placed on administrative leave/suspension without pay and she responded that the attorneys said that they had to place me on suspension without pay.

38.     On or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, the Plaintiff asked for the evidence, documentation, dates, or something that supports why BJCTA was placing the Plaintiff on administrative leave/suspension without pay.

39.     At said time and place, the HR Director and Chief of Staff told Plaintiff they did not have anything and had not received evidence or documentation.  The Plaintiff then asked for some written explanation for the disciplinary action against her, with a signature, but was denied this request.

40.     On or about April 25, 2018, at the BJCTA offices in Jefferson County, Alabama, the Plaintiff was taken to collect her personal belongings while the HR Director examined the Plaintiff's personal papers and documents to make sure the papers and documents being retrieved by the Plaintiff were not BJCTA documentation.   Afterwards, the Plaintiff was then escorted to the BJCTA vehicle that was in her possession and told to remove my personal items.

41.     On or about May 2, 2018, in Jefferson County, Alabama, the Plaintiff received a letter from BJCTA, dated April 30, 2018 informing the Plaintiff that her employment with BJCTA was terminated, effective April 30, 2018.

42.     On or about May 23, 2018, in Jefferson County, Alabama, Murdock was officially terminated by the Defendant BJCTA.  On May 25, 2018, Murdock filed a lawsuit alleging a gender discrimination and a violation of her due process rights.

43.     In or about July 2018, in Jefferson County, Alabama, Plaintiff Culpepper's job

responsibilities were re-assigned to Darryl Grayson, a male employee.   Grayson did not have the same or similar qualifications or experience as the Plaintiff in performing Plaintiff's job duties and responsibilities as Contracts and Compliance Officer.   Moreover, Grayson did not have the requisite job qualifications or experience required for the duties and/or responsibilities for the job.

44.     At all materials times herein, including but not limited to time period of 2013-2015, all uses of any BJCTA credit card by Plaintiff Culpepper were approved by her supervisor / superiors at BJCTA.

45.     At no time did Karen Jacobs have proper authorization to issue the two checks to Barbara Murdock totaling $20,000.00, to wit: the check issued on or about September 2, 2016 for $2,000.00 and the check issued on or about September 16, 2016 for $18,000.00.

46.     At no time was Karen Jacobs ever disciplined for the unauthorized use of company funds for having issued the two checks totaling $20,000.00 to Barbara Murdock.

47.     The above stated reason for Plaintiff Culpepper's employment termination is not legitimate and is a pretext for illegal discrimination and retaliation. Further, the Defendant knew that said reason(s) were not legitimate and are a pretext for illegal discrimination and retaliation.

48.     At all material times hereto, Starr Culpepper was and is a female of African American descent.

49.     At all material times hereto, Karen Jacobs was and is a female of Caucasian descent.

50.     At all material times hereto, Darryl Grayson was and is a male of African American descent.

51.     Defendant has engaged in illegal discrimination against the Plaintiff because of her race.  Consequently, Plaintiff Culpepper's employment with BJCTA was terminated because of

her race.

52.     Defendant has engaged in illegal discrimination against the Plaintiff because of her gender.  Consequently, Plaintiff Culpepper's employment with BJCTA was terminated because of her gender.

53.     Defendant has engaged in illegal retaliation against the Plaintiff because of her opposition to perceived discrimination and/or her participation in an internal BJCTA investigation involving and/or including Murdock's allegations of discrimination.

54.     The Defendant has engaged in a pattern and practice of race discrimination against African American employees.

55.     Likewise, the Defendant has engaged in a pattern and practice of gender discrimination against female employees.

56.     The Plaintiff has been treated differently than similarly situated employees employed by Defendant in the terms and conditions of her employment because of her race, and/or alternatively, because of her gender.

57.     At all material times, the BJCTA HR Director, Mike Simms, acted as an agent, of an on behalf of, Defendant BJCTA.

58.     At all material times, the BJCTA and Chief of Staff, Adrian Solomon, acted as an agent, of an on behalf of, Defendant BJCTA.

59.     Defendant has engaged in illegal discrimination and retaliation against the Plaintiff because of her gender and race.  As a result of said illegal discrimination and retaliation, Plaintiff Culpepper has suffered and continues to suffer damages.

60.     The Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

61.     The Defendant's actions were reckless and taken in willful disregard of the probable consequences of their actions.

## COUNT I
### Violation of Title VII, 42 U.S.C. §§ 2000(e) *et seq.*, for Racial Discrimination

62.     Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

63.     The Defendant has engaged in intentional race discrimination in the terms and conditions of the Plaintiff's employment including, but not limited to, the Plaintiff's termination.

64.     The Defendant's conduct violates Title VII.

65.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

66.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

67.     Plaintiff had an at-will employment contract with Defendant.

68.     Plaintiff's race was a determining factor in BJCTA's decision to terminate Plaintiff, subject Plaintiff to less favorable terms and conditions of employment and harass Plaintiff during her period of employment at BJCTA.

69.     BJCTA knowingly and willfully discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, mental anguish, emotional distress, humiliation, and damage to her professional reputation. Consequently, Plaintiff prays for an amount of compensatory and punitive damages in amounts to be proven at trial.

## COUNT II
### Violation of 42 U.S.C. § 1981,
### as applied by and through 42 U.S.C. §1983
### for Racial Discrimination

70.    Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

71.    The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination in the making and enforcement of contracts, including but not limited to; all privileges, terms and conditions of the contractual relationship, and the termination of contracts on the basis of race.

72.    Plaintiff had an at-will employment contract with Defendant.

73.    Plaintiff's race was a determining factor in BJCTA' decision to terminate Plaintiff, subject Plaintiff to less favorable terms and conditions of employment and harass Plaintiff during her period of employment under BJCTA.

74.    BJCTA knowingly and willfully discriminated against Plaintiff on the basis of her race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, mental anguish, emotional distress, humiliation, and damage to her professional reputation.  Consequently, Plaintiff prays for an amount of compensatory and punitive damages in amounts to be proved at trial.

## COUNT III
### Violation of Title VII, 42 U.S.C. §§ 2000(e) *et seq.*, for Retaliation

75.    Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

76.    In taking the above-described actions, Defendants intentionally and wrongfully retaliated against Plaintiff as a result of his having engaged in protected activity in violation of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq*.

77.    Plaintiff's opposition to her suspension without pay for an alleged unauthorized use of company funds after revealing to BJCTA that a Caucasian employee had engaged in the unauthorized use of company funds, was a determining factor in BJCTA's decision to terminate Plaintiff's employment.

78.    Plaintiff's participation in a protected activity – assisting BJCTA in its internal investigation into Murdock's unauthorized use of BJCTA funds and Murdock's concerns of discrimination and lack of due process and uncovering the misconduct of Karen Jacobs– was a determining factor in BJCTA's decision to terminate Plaintiff's employment.

79.    BJCTA knowingly and willfully retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq,* thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C. § 1983 and relevant case law.

80.    As a result of this retaliation, Plaintiff was caused to be injured and damaged; to have his career significantly and adversely impacted; and to endure mental anguish emotional distress, humiliation and embarrassment.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, mental anguish, emotional distress, humiliation, and damage to his professional reputation. Consequently, Plaintiff prays for an amount of compensatory and punitive damage in amounts to be proven at trial.

## COUNT IV
### Violation of Title VII, 42 U.S.C. §1981,
### as applied by and through 42 U.S.C. §1983 for Retaliation

81. Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

82. In taking the above-described actions, Defendants intentionally and wrongfully retaliated against Plaintiff as a result of his having engaged in protected activity in violation of 42 U.S.C. § 1981, as applied by and through 42 U.S.C. § 1983.

83. Plaintiff's opposition to her suspension without pay for an alleged unauthorized use of company funds after revealing to BJCTA that a Caucasian employee had engaged in the unauthorized use of company funds, was a determining factor in BJCTA's decision to terminate Plaintiff's employment.

84. Plaintiff's participation in a protected activity – assisting BJCTA in its internal investigation into Murdock's unauthorized use of BJCTA funds and Murdock's concerns of discrimination and lack of due process and uncovering the misconduct of Karen Jacobs– was a determining factor in BJCTA's decision to terminate Plaintiff's employment.

85. BJCTA knowingly and willfully retaliated against Plaintiff in violation of in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C. § 1983 and relevant case law.

86. As a result of this retaliation, Plaintiff was caused to be injured and damaged; to have his career significantly and adversely impacted; and to endure mental anguish emotional distress, humiliation and embarrassment.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct,

Plaintiff has suffered and continues to suffer lost wages, mental anguish, emotional distress, humiliation, and damage to his professional reputation. Consequently, Plaintiff prays for an amount of compensatory and punitive damage in amounts to be proven at trial.

**COUNT V**
**Violation of Title VII, 42 U.S.C. §§ 2000(e) *et seq.*, for Gender Discrimination**

87.    Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

88.    The Defendant has engaged in intentional gender discrimination in the terms and conditions of the Plaintiff's employment including, but not limited to, the Plaintiff's termination.

89.    Defendant's conduct violates Title VII.

90.    Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

91.    Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

92.    Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

93.    Plaintiff had an at-will employment contract with Defendant.

94.    Plaintiff's gender was a determining factor in Defendant's decision to terminate Plaintiff, subject Plaintiff to less favorable terms and conditions of employment and harass Plaintiff during her period of employment at BJCTA.

95.    BJCTA knowingly and willfully discriminated against Plaintiff on the basis of her race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, mental anguish, emotional distress,

humiliation, and damage to her professional reputation. Consequently, Plaintiff prays for an amount of compensatory and punitive damage in amounts to be proved at trial.

**COUNT VI**
**Negligent and /or Wanton Hiring, Training, Supervision and Retention**

96.     Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

97.     The Defendant BJCTA negligently, recklessly, wantonly and/or intentionally hired officers, managers and/or supervisors within its corporation including but not limited to Mike Simms and Adrian Solomon, that it knew would in the future and had in the past discriminated against BJCTA employees based upon their race and/or gender.

98.     The officers, managers and/or supervisors knew, or in the exercise of reasonable care should have known, that widespread, corporate sponsored race discrimination was being engaged in by its employees with authority to hire, fire and/or promote, yet did nothing to prevent such discrimination by its high level employees.   Indeed, the Defendant BJCTA actively encouraged such race-based and/or gender-based discrimination by its high level employees.

99.     The Defendant BJCTA, once it had  actual  knowledge  of  the  race  based discrimination engaged in by its managerial employees, failed to halt said discrimination; failed to discipline and/or terminate the offending employee[s]; retained said offending employee[s] in their managerial capacity; and encouraged additional discrimination by said employee[s].

100.     As a direct and proximate consequence of the Defendant's negligent, reckless, wanton and/or intentional behavior, the Plaintiff has been injured and damaged as follows:

a.  she was caused to suffer direct and continuing financial losses, including, but not limited to, lost salary, lost benefits, lost retirement proceeds, and other financial opportunities;

b.  she was not afforded an opportunity to advance in the Defendant corporation and was denied the benefits thereof;

c.  she has suffered other financial damages, including attorneys' fees and costs;

d.  she has suffered and will continue to suffer embarrassment and humiliation;

e.  she has suffered and will continue to suffer mental anguish and emotional distress;

f.  she has suffered and will continue to suffer lost career opportunities;

g.  she has been otherwise injured and damaged.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, mental anguish emotional distress, humiliation, and damage to her professional reputation. Consequently, Plaintiff prays for an amount of compensatory and punitive damage in amounts to be proved at trial. in amounts to be proved at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff prays the Court award her the following relief:

1.  Enter a judgment for the Plaintiff as to Defendant's liability and responsibility for Plaintiff's damages;

2.  Lost wages, including lost fringe benefits, which resulted from the illegal discrimination;

3.  Compensatory and punitive damages, including mental and emotional distress, back pay and front pay;

4.   Attorney's fees and costs;

5.   Award plaintiff such other and further relief as is just and proper.

Respectfully submitted,

Larry A. Golston, Jr. (GOL029)
Leon Hampton Jr. (HAM105)
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:    (334) 954-7555
larry.golston@beasleyallen.com
leon.hampton@beasleyallen.com

Sidney M. Jackson (ASB-1462-K40W)
Samuel Fisher (ASB-2675-E68S)
**WIGGINS, CHILDS, PANTANZIS**
**FISHER & GOLDFARB, P.C.**
301 19th Street North
Birmingham, Alabama 35203
Phone: (205) 314-0500
Fax:    (205) 314-0835
sjackson@wigginschilds.com
sf@wigginschilds.com
*Attorneys for Plaintiff*

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Larry A. Golston, Jr.
*Attorney for Plaintiff*